**Oleg Valentinovich SAMSONOV,
Petitioner,**

v.

**John ASHCROFT, Attorney
General, Respondent.**

No. 02–74315.
Agency No. A74–799–352.

United States Court of Appeals,
Ninth Circuit.

Argued April 2, 2004.

Submission Vacated April 5, 2004.

Resubmitted June 3, 2004.

Decided June 3, 2004.

Alan Harris, Esq., Geffner & Bush, Paula N. Harris, Esq., Harris & Harris, LLP, Burbank, CA, for Petitioner.

Regional Counsel, Western Region Immigration & Naturalization, Laguna Nigu-

el, CA, CAC–District Counsel, Esq., Office of the District Counsel, Los Angeles, CA, Ronald E. LeFevre, Chief Legal Officer, Office of the District Counsel, San Francisco, CA, Terri J. Scadron, Esq., Daniel D. McClain, U.S. Department of Justice, Washington, DC, for Respondent.

Before PREGERSON, BEEZER, and TALLMAN, Circuit Judges.

## MEMORANDUM *

Petitioner Oleg Valentinovich Samsonov appeals the Board of Immigration Appeals' ("BIA") decision to affirm the Immigration Judge's ("IJ") order, which denied his petition for asylum as untimely and denied his petition for withholding of removal on the merits. We grant the petition for review in part.

### I

■ We lack jurisdiction to review the BIA's determination that Samsonov did not file his asylum application within one year of his entry into the United States. *See* Immigration and Nationality Act ("INA") § 208(a)(2)(B), 8 U.S.C. § 1158(a)(2)(B). Section 1158(a)(3) provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General under [section 1158(a)(2) ]." 8 U.S.C. § 1158(a)(3). Here, it is clear that the BIA denied Samsonov's application for asylum as untimely under section 1158(a)(2)(B), and found that he did not qualify for an exception under section 1158(a)(2)(D).[1] We have no juris-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. The BIA may consider an untimely asylum application if the alien meets the criteria for "extraordinary circumstances" that excuse the delay. 8 C.F.R. § 208.4(a)(5). We have

received letter briefs by both parties pursuant to Federal Rule of Appellate Procedure 28(j), addressing Samsonov's contention at oral argument that the Department of Justice's intent behind 8 C.F.R. § 208.4 permits us to reach the merits of his asylum claim. *See* 65 Fed.Reg. 76121, 76123–24 (December 6, 2000). This portion of the regulatory history

diction to review the BIA's determination. *Hakeem v. INS*, 273 F.3d 812, 815–16 (9th Cir.2001).

## II

### A

Samsonov's petition for review is governed by the permanent provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 because immigration proceedings were initiated after April 1, 1997. *See Kalaw v. INS*, 133 F.3d 1147, 1149–50 (9th Cir.1997). We have jurisdiction pursuant to 8 U.S.C. § 1252(a). Because the BIA adopted most of the IJ's reasoning, overturned the IJ's adverse credibility determination, and offered a short analysis of its own, we review both the BIA's decision and those aspects of the IJ's opinion that the BIA incorporated as its own. *See Molina–Estrada v. INS*, 293 F.3d 1089, 1093 (9th Cir.2002). We review the agency's decision to deny withholding of removal for substantial evidence. *See INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

### B

■ Under 8 U.S.C. § 1231(b)(3), the "Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." To obtain withholding of removal, Samsonov bore the burden of demonstrating a clear probability that he would be persecuted on the

basis of a protected ground if he is sent back to Russia. *See* 8 C.F.R. § 208.16(b)(2); *INS v. Stevic*, 467 U.S. 407, 430, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984); *Li v. Ashcroft*, 356 F.3d 1153, 1157 n. 1 (9th Cir.2004).

The IJ determined that Samsonov did not establish a clear probability that his life or freedom would be threatened in Russia based on his religion, and we agree. The only evidence Samsonov provided about possible religious persecution was his testimony recounting being attacked by some young people when leaving a Jewish theater, and being introduced to his fellow prisoners as a "kike" who had "sold out Russia ... as a Jewish person." The IJ and BIA correctly determined that these acts of discrimination did not rise to the level of persecution. *Ghaly v. INS*, 58 F.3d 1425, 1431 (9th Cir.1995) (holding that persecution is an "extreme" concept).

■ However, Samsonov has raised a presumption of future persecution based on his political opinion. The BIA determined that the IJ's adverse credibility determinations were not supported in the record, so we must accept Samsonov's factual contentions as true. *Kataria v. INS*, 232 F.3d 1107, 1114 (9th Cir.2000). Because the BIA deemed Samsonov credible, no corroborating evidence is required. 8 C.F.R. § 208.16(b); *Ladha v. INS*, 215 F.3d 889, 900–01 (9th Cir.2000).

The BIA erred by upholding the IJ's determination that Samsonov had not established a presumption of future persecution. The BIA concluded that Samsonov's testimony, though credible, was too vague;

---

suggests that the list of "extraordinary circumstances" should be expanded to include the time during which an alien maintains a valid status (as Samsonov did while he maintained his K–1 non-immigrant fiancé visa), and that a petitioner may file for asylum

within a reasonable period after such status expires. However, as noted above, we have no jurisdiction to review the BIA's discretionary decision regarding whether or not Samsonov demonstrated extraordinary circumstances.

however, whether testimony is vague or not relates to a petitioner's credibility, not whether the events the petitioner describes (when taken as true) are legally sufficient to justify withholding of removal.

An applicant can establish eligibility for withholding of removal by first proving that he suffered persecution in the past. 8 C.F.R. § 208.16(b)(1)(i). Evidence of past persecution is found when an applicant shows (1) an incident or incidents that rise to the level of persecution; (2) that the persecution was on account of the applicant's political opinion; and (3) that the persecution was committed either by the government or by forces the government was unwilling or unable to control. *See Chand v. INS,* 222 F.3d 1066, 1073 (9th Cir.2000). Samsonov's credible testimony compels the conclusion that he has satisfied all three prongs.

First, Samsonov established that he suffered acts rising to the level of persecution, which is defined as "the infliction of suffering or harm upon those who differ [in political opinion] in a way regarded as offensive." *Baballah v. Ashcroft,* 367 F.3d 1067 (9th Cir.2004) (amended opinion) (citation omitted). We have held that "persistent death threats and assaults on one's life, family, and business rise to the level of persecution within the meaning of the Act." *Id.* at 987–88 (citation omitted). Samsonov testified credibly that he received anonymous threatening phone calls telling him to stop investigating his father's death and to close his publishing house, and that his publishing house was vandalized. In addition, Samsonov was abducted, beaten, threatened, and choked with a makeshift noose. Samsonov clearly endured physical and economic assaults on his life and business. *See Navas v. INS,* 217 F.3d 646, 656 n. 9 (9th Cir.2000) (noting that vandalism, threatening telephone calls, and physical harm may all constitute persecution).

Second, Samsonov's testimony provided circumstantial evidence that his persecutors were motivated by his political opinion. *See Baballah,* slip op. at 5740. The anonymous telephone threats referred specifically to his father's death and the family's publishing house. The attackers who abducted him were clearly motivated by his publication of his father's anti-government manuscript. Samsonov has established that the persecution he suffered was linked to his expression (via publication) of a particular political opinion about the Russian government.

The third prong of the test is met when widespread persecution of a particular group is documented in State Department Country Reports, and when local government officials do not respond when an asylum applicant seeks help. *See Andriasian v. INS,* 180 F.3d 1033, 1042–43 (9th Cir.1999). Both elements are present here. Samsonov testified that he received no assistance from local investigative authorities when he sought help after his father's death, the vandalism of his publishing house, and his abduction. In addition, the 2000 Russian Country Report lists numerous accounts of the abuses faced by print, television, and radio journalists who publicly criticize the government.

Because Samsonov has established past persecution, this gives rise to a presumption that he has also "shown a clear probability of future persecution so as to entitle him to withholding of deportation." *Navas,* 217 F.3d at 657; 8 C.F.R. § 208.16(b)(1)(i). Under *INS v. Ventura,* 537 U.S. 12, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002), we remand so the BIA may consider whether the government has rebutted this presumption by a preponderance of the evidence. *Ventura,* 537 U.S. at 17–18,

123 S.Ct. 353; 8 C.F.R. §§ 208.16(b)(1)(i)(A) (discussing evidence of changed country conditions), 208.16(b)(1)(ii). On remand the government may present evidence of recent changes in Russia. *Ventura,* 537 U.S. at 18, 123 S.Ct. 353; *see also* 8 C.F.R. §§ 1003.2(a) (permitting the BIA to reopen the record).

PETITION DISMISSED IN PART; GRANTED IN PART.